Judge Buckner
delivered the opinion of the Court.
On the 23rd of May, 1821,Isaac Marks-berry executed his written obligation, to Thomas Turpin, binding himself to pay $300, on or before the 1st day of April next thereafter, tested by Samuel Marksberry. By the obligee, it was assigned to Thomas Terrill, and by Terrill to Ann Turpin. After her death, her administrator commenced súit upon it and recovered judgment. To be relieved against the judgment, Marksberry, now the defendant in error, instituted his bill in chancery.
In the bill, he alleges, that he had bought of said Turpin, a tract of land, atthe price of $500,to be paid in the paper of the bank of the commonwealth of Kentucky; $200 of which sum was then paid, and for the remainder, a note was executed; which “"was, inadvertently, or through mistake, written and signed for $300.” That he was not as particular in noticing it, as he would have been, had he not felt the fullest confidence, in the honor of the obligee; that he af-terwards paid to said Turpin, in that kind of paper, $110, which was received without objection, and for which a credit was endorsed, on the note.
The assignments are set forth, with an allegation, that the obligee had made his assignment of the note for commonwealth’s bank paper, and that when it became due, it was worth only one half of its nomina^_T amount; but^that the administrators were endeavor--' jng to coerce the payment of the entire sum, in specie.
*623 Terrill answered, saying, that, be had received the assignment of the note, as for specie, having rxo knowledge of any such contract, as that alleged by the complainant, and calls for the proof of it. fie admits, that, while he held the note, he received $>1Q0 of the amount in commonwealth’s bank notes, being then passed for money, and gave a credit for $>110, but denies, that he felt himself bound to do so.
The administrators, in their answer, deny any knowledge of the original transaction, or of that between Terrill, and-the complainant. They demand proof of the allegation of the bill, &c.
Thomas Turpin, in hisanswer, makes,in substance, the following statement:
About the 21st of April, 1821, he purchased froth his co-defendant, Terrill, a tract of land, and executed his note for the price, "payable in one year thereafter. In order to enable him to make payment, he sold the land, in the bill mentioned, for the sum of $500, payable at the same time, that he was by contract, to make payment to Terrill; and he might have stated to the complainant, that he would receive from him any kind of money, which Terrill would receive from him; but, there was not any distinct agreement or understanding, that the respondent would receive commonwealth’s bank notes. He did receive $200 of said $500, in such notes, in April or May, 1821, at the time of the contract, when that money was but little below par. At the time of bis contract with the complainant, he informed him, that the note, which he had executed to Terrill, was for dollars, and that, he must execute his note to respondent, in the same way, as he intended it, to enable him to make payment to Terrill.
Samuel Marksberry, the subscribing witness to the note, in his deposition, states, that he was requested to write the note from the complainant to Turpin, which he did. His understanding was, that it was to be paid in the currency of the country; and he was surprised, when informed, that the note did not so express the contract. The complainant, at the date of said contract, held a note on said Turpin for specie, which he was informed, he (Turpin) had been compelled to pay.
*624 Various depositions of other witnesses were read on the trial, many of them proving no important fact. We shall notice such Only, as are considered to have some hearing on the matter in dispute.
J. Philips states, that, in a conversation between complainant and Turpin, as to the kind of money, in which the note, according to contract, was to he paid, he heard the former ask the latter, if the note was not to be paid in commonwealth’s paper, to which he made no reply. He again asked him, if it was to be paid in specie, but received no answer.
The witness did not state, when this conversation took place.
He heard Turpin, at another time, say, that he was about selling his land to the complainant, and buying some from Terrill, which he could do, and pay for it in the same kind of money, he was to get from complainant; and the impression of the witness was, that it was commonwealth’s paper, which said Turpin was to get from Marksberry. He was Certain, that it was not specie, but paper money of some kind.
J. Banks was informed by said Turpin, (hat he had sold his land to the complainant for $600, which, the witness told him, was, in his opinion a high price, Turpin replied, he did not know,considering the way money was, or was about to bé.
R. Marksberry was informed by Turpin, that he and the complainant had closed their contract about the land, and that the price was to be paid in commonwealth’s paper, of which kind of money, he had never before heard. Turpin, at same time, said he was selling his land, to enable him to buy some from Terrill.
Milton Jones was present, when complainant anti Turpin were in negotiation, concerning the sale of the land. They differed about the price, but he did not hear either of them say any thing about commonwealth’s paper. They spoke of dollars, generally. -
Thomas Terrill, whose deposition was read also, says, that he had not received from Turpin any part of the price of the land in specie; but, that when he made the contract with him, it was for dollars.
ParolevI-dencenot a<b contradict c® ' control the import of a ^ament^ualess it be’ shewn that ^¡^ke^the^ instrument has been so drawn as -nat to express the terms of the contract and the intention of the parties.
*625 William Turpin states, that he board thfbomplain-ant and Turpin in conversation, concerning the sale of the land; the agreement was, that the note be executed for dollars, but he was not present at the time of its execution. Pie says, that when the $1,00 were paid, for which the credit of $110 was entered, as spoken of by the other witnesses, he told the complainant, he ought then to pay the remainder of the note; that Turpin was pressed for money, and would take commonwealth’s paper, if paid at that time, but if he failed to discharge the note then, he did not know what kind of money he might be compelled to pay. The complainant replied, that he had not the money, but would be ready, when the note became due.
A jury empanelled and sworn to ascertain the value of commonwealth’s bank notes, at tb'e time the note, on which the judgment was obtained, became due, returned a verdict, estimating it at one half only of its nominal value.
By the final decree, the court ordered the injunction, which the complainant, now the defendant in error, had obtained against the judgment at law tobe perpetuated, as to $101 40 cents, and dissolved it, as to the remainder, being $4 60 cents, and, that Marks-berry should recover his costs.
To reverse Ibis decree, the administrators of Ann Turpin, deceased, prosecute this writ of error, with supersedeas. *
The doctrine, applicable to cases like this, is Wei! established. The greatest difficulty, to be encountered, is often presented, in attempting to make the proper application of it, to the particular case.
Where the terms of an agreement have been reduced to writing, and that signed by the person intended to be bound thereby, parol evidence is inadmissible to contradict it. The writing having been constituted, by the parties, as the evidence of the contract, so long as it exists, the law reegonizes no other description of testimony. This has been em-pbatically called “one of the foremost rules of law;” and where a court of chancery is applied to by bill, for its extraordinary assistance, to compel the specific performance of a contract, existing only in parol *626 agreements, but alleged to have been prevented by fraud, from being properly authenticated, or to supply fraudulent omissions, or to rectify mistakes, or to expunge surreptitious additions, it has uniformly manifested a reluctance to break in upon the rule, and the statute against frauds and perjuries.
General allegation of “in-advertency or mistake,” in the execution of a note for “dollars,” instead of com-monw’th’sb’k notes, not sufficient, without other a-verments.
But where, by fraud or mistake, the instrument has been so drawn, as not truly to express the terms of the contract, relief will be granted. Each of them forms a head of equitable jurisdiction.
It was in cases of fraud, that courts first subjected written instruments to the control of parol evidence; and, at this timej mistake is as unquestionably subject to the same control. But where either is relied upon, it must be distinctly alleged, and clearly proved; especially, where it is offered offensively, to set aside instruments.
Fraud, in this case, has not been alleged; had such an allegation been made, the proof in the cause would have left it entirely unsupported. If therefore, the ¿testimony offered was admissible, and authorized the relief granted, it must have been on the ground of a mistake. And here, it may be remarked, that no circumstances are set forth in the bill, showing how the mistake, if one was made, happened. The complainant has thought proper to make a general allegation, that the note “was inadvertently, or through mistake, written and sjgned for $300,” &c. He does not state, that he did not read it, or hear it read; that he signed it, believing at the time, that it called for ■notes of the bank of the commonwealth; or even, that he was ignorant of the legal import of the word “dollars,” and was induced, by the person to whom the note was executed; or in any other way, to believe, that he could be legally compelled to pay bank notes only.
The parol testimony, it may be admitted, renders it probable, although by no means certain, that the contract was for such notes. The bill, however, alleges, that it was for notes of the bank of the commonwealth.
The statement of Samuel Marksberry, the subscribing witness to, and who wrote the note, is very *627 unsatisfactory. He gives no explanation of the manner,'in which the alleged mistake took place. He points out no conversation between the contracting parties, no directions given to him by either, as to the manner of wording the instrument, nor a single fact, which would authorize the inference, that the note did not truly express the contract. His understanding was, that it was to be paid, not in notes of the bank of the commonwealth, but, in the currency of the country, and he was surprised, when he was informed, that the note did not so express the contract. How the impression was made on his mind, hisdepo-sition leaves us to conjecture.
Declaration? or admissions of assignor after assign m’t, not competent testimony against as-signee.
When the conversation between Marksberry and' Turpin, spoken of by Philips, took place, is not stated; The note bears date in May, and it was assigned to Terrill in the following August. If after the assignment, it could not be received to the prejudice of the other defendants. The parties seem to have differed about the kind of money to be paid, and the interrogation, by Marksberry, was evidently intended to extract, from the other, confessions to be used in a suit, which might then have been depending, or in one which might have been anticipated. There was but one witness present, and it may have been prudent, on the part of Turpin, to decline, ás he did, to make any response. The witness does not detail the conversation; he says, they were engaged in one, about the note, and particularly, as to what kind of money, it was to be paid in. The remarks, which he heard Turpin make on another occasion, were, before the note was executed; indeed, before the contract was entered into, and he does not recollect, whether he spoke of commonwealth’s notes, or paper of some other kind. ^
The remarks, made to Banks by Turpin,,prove nothing more than, that he did not calculate on being enabled to collect specie on the note, unless by great-delay. At least, they do not prove, that he had bound himself, to receive bank paper.
R. Marksberry is the only witness, who states, that Turpin acknowledged, that the price of the land was to be paidincommonwealth’s bank notes, and he adds. *628 that, at the same time, Turpin observed, he was selling his land’ t0 enable him t0 bu-y TerriI1’s*
Mistake in the written°con-a tract, cannot be established the ^parties at made a different contract, rian/from^" that, atwhieh it was reduc’d to writing-.
proof, in the cause, shews, that his note to Terrill was for dollars, and forms a strong reason to suppose, that he would have required Marksberry’s note to him, to be for the same.
Some of the other witnesses represent the contract very differently'.
Jones, who was present when the parties were in negotiation, as to the sale of the land, heard nothing said, by either of them, as to bank paper; they spoke of dollars; and William Turpin says, that the agreement was for dollars, and that, when-he afterwards advised Marksberry to pay off the note at that time, or that, he did not know what kind of money, he might be compelled to pay, he replied, he had not the money. The witness does not state, that he said a word about being for bank paper, which, it is most probable, ho would have done, if that had been the fact.
These conflicting statements, with examples of a similar character, which are so often presented, in courts, where such disputes are the subjects of investigation, strongly evince the wisdom of the general rule, that parol testimony is inadmissible, to vary or contradict a written instrument.
But, conceding tpc position attempted to be established by the defendant in error-, as true, that the contract was for commonwealth’s bank notes, it remains tobo considered,how,that fact is to be reached.
Will proof, that tbe parties had made a contract in one way, no(] at a different time reduced it to writing, ‘n another, be sufficient to shew, that the.,writing was executed by mistake, without proof of any other fact, conducing to support such an allegation? if it then the rule, above laid down, is not worth the trouble of transcribing it. All the evils, intended to be guarded against by it, would ensue. In vain, wou^ an obligee endeavor to guard against perjury, by having the instrument read to the obligor, before signature, in the presence of witnesses, or even cor-vectly explaining to him, the legal import of the cov-, *629 enant. He might still prove by parol, that the contract bad been made, in another w.ay, at a different time, and thence infer a mistake. Suppose, in case, the note had been drawn for gold* or silver, and the defendant in error had read it, or heard it read, would he still be permitted to prove by parol, that the contract was for bankpaper2
Would such proof be admissable to shew a mistake?
In the case of Baugh vs. Ramsey, IV. Monroe, 159, this court said, “In short, the bill goes on the ground, that the contract was for bank paper, and the note written otherwise, and, that he has a right, of course, to make the writing conform to the parol proof, of what the contract was, without shewing, that the writing was, in any degree fraudulently drawn differently from the contract.”
The case put, may be considered as stronger against a complainant, than the present, but the principle, on which it would turn, is the same. The note was written, and witnessed in his presence, by a man of his own name, and probably his relation. He does not say, that he did not hear it read, or did not understand its phraseology and legal import, but, merely, “that he was not as particular, in noticing it, as he would have been, had he not felt the fullest confidence in the honor of the obligee.”
The doctrine advanced, in the case of Inskoe vs. Proctor, VI. Monroe, 311, that relief may be granted, in equity, upon parol proof, of a mistake in opposition to the language of the writing, and against the positive denial of the answer, is not at war, with any position assumed in the case of Baugh vs. Ramsey, whatever doubt some may entertain, with respect to the correctness of its application, to the former case, and of the-correctness of some of tiie principles, as extracted by the court, frcJm some of the cases there cited.
From the allegations of the bill, in that caso, as exhibited in the report of the case, it is true, that the relief sought was made to depend, not so much on the mistake of the complainant, as of the draftsman of the note. It does not appear, by express averments, that he laboured under any misconception of the language employed ,iu the note, but, the court must *630 have understood them, as amounting in- substance to such an allegation, and, that they were supported by proof.
Anderson. for plaintiffs.
If the positions, assumed in this opinion, be correct, it is evident that the decree of the circuit court is^ erroneous.
It must be reversed with costs, and the cause remanded, with directions to dissolve the injunction with damages, and to dismiss the bill,